THE CAROLINA GROCERY CO. v. BURNET, CO. TREAS.

1. MANDAMUS—CONTROVERSY WITHOUT ACTION—SUPREME COURT.—
   Proceeding for mandamus, under Code, 374, may be had originally
   in this Court in nature of controversy without action.
2. CHARLESTON COUNTY.—THE COUNTY BOARD OF COMMISSIONERS of
   Charleston County, composed of the supervisor and the chairmen
   of the township boards appointed and organized under the act of
   1894, 21 Stat., 481, is a legal body.
3. JUDICIAL QUESTION—COUNTY COMMISSIONERS—COUNTY AND TOWN-
   SHIP GOVERNMENTS—SPECIAL ACTS—ACTS 23 STAT., 1, 9, 113—CON-
   STITUTION.—Under sec. 29, art. I., Constitution, whether a general
   law can be made applicable in a given case is a judicial question,
   if the acts, 23 Stat., 1, 9, and 113, amending the act of 1894, 21 Stat.,
   481, as to county and township government, are special laws, they
   are violative of Constitution, art. III., sec. 34, subsection 11, but
   the exemptions therein come under the *proviso* to subsection 12 of
   that section, providing for special provisions in general laws, and
   they are constitutional; and they may be also sustained under art.
   VII., sec. 11, of Constitution, authorizing the General Assembly to
   provide system of township governments.
4. MANDAMUS is the proper proceeding to compel a county treasurer to
   pay a county warrant which he refuses to pay on the ground that the
   county board of commissioners issuing it is not a legally constituted
   body.

Proceeding in the original jurisdiction of this Court by
the Carolina Grocery Co. against Barnwell R. Burnet,
County Treasurer of Charleston County, for mandamus re-
quiring defendant to pay county warrant held by plaintiff.

*Messrs. W. M. Fitch, J. W. Barnwell, T. W. Bacot* and
*W. Turner Logan,* for plaintiff.

*Attorney General G. Duncan Bellinger,* for defendant.

July 22, 1901. The opinion of the Court was delivered
by

MR. JUSTICE JONES. This is a controversy submitted
without action on an agreed statement of facts in the origi-
nal jurisdiction of this Court. The plaintiff, a corporation

of this State, seeks a writ of mandamus to compel the defendant, as county treasurer of Charleston County, to pay a warrant against said county for $3.50, issued by W. P. Cantwell, the supervisor of said county, in favor of the plaintiff, upon the approval of the claim by the county board of commissioners of said county. The county treasurer refused to pay the claim on the ground that the board of county commissioners of Charleston County is not a legally constituted board and had no power to authorize payment. The purpose of this controversy is to determine whether the board of commissioners of Charleston County is a legal board.

Before proceeding further, we will notice an inquiry made at the hearing, whether this Court has jurisdiction to hear this controversy. Sec. 374 of the Code of Civil Procedure provides: "Parties to a matter in dispute which might be the subject of a civil action may, without action, agree upon a case containing the facts upon which the controversy depends, and present a submission of the same to any Court which would have jurisdiction if an action had been brought * * *" This provision of the Code is applicable to this Court in all matters within its original jurisdiction, and since this Court has undoubted original jurisdiction to issue writs of mandamus under art. V., sec. 4, of the Constitution, jurisdiction to hear this controversy submitted under sec. 374 of the Code is clear. *Simpson* v. *Willard*, 14 S. C., 191; *Macoy* v. *Curtis*, 14 S. C., 367. This case is not like the case of *Nicholson* v. *Cousar*, 49 S. C., 329, wherein it was sought to submit to this Court a controversy without action involving the specific performance of a contract for the sale of land, a matter not within the original jurisdiction of this Court.

The county board of commissioners of Charleston County, whose authority to act as such is now questioned, is composed of W. P. Cantwell, the supervisor of the county, as *ex officio* chairman, and Morris Israel and others named in the proceedings, who are chairmen of the township boards of commissioners of the several townships of Charles-

2    ton County, appointed by the governor on the 13th day of February, 1901, under the provisions of the act entitled "An act to provide a system of county government for the several counties of this State," approved January 4, 1894, 21 Stat., 481.   If this act is now of force in Charleston County, in so far as it provides for the mode of organizing the county board of commissioners, then the writ of mandamus should issue to compel the county treasurer to pay the plaintiff's claim, which has been approved and duly ordered to be paid by said board and proper warrant issued therefor.   At the session of 1898, the legislature passed an act entitled "An act to provide for the county government of the various counties of this State."   This act was not approved by the governor, but not having been returned by him to the General Assembly, the act on the 12th day of January had the same force and effect as if he had signed it, under the provisions of sec. 23, art. IV., of the Constitution, 23 Stat., 1.   This act provided in sec. 2: "That the governor shall before the 1st day of February, A. D. 1899, upon the recommendation of the members of the General Assembly from the several counties or a majority of them, and before the 1st day of February of each succeeding two years thereafter, appoint two persons from each county, who shall be known as the commissioners of the county, and who shall act with the supervisor in the governmental matters of the county, &c."   In sec. 3, the act provides: "That on the 1st day of February, A. D. 1899, the office of county commissioners and township commissioners, as now provided by law to be appointed by the governor, shall be abolished, and the jurisdiction, powers and duties now devolved by law upon the appointive boards of county and township commissioners is hereby devolved upon the boards of county commissioners herein provided for, to consist of the county supervisor and two commissioners; and all claims against the counties to be valid shall be approved in writing by a majority of said board, &c."   In sections 7 and 9 it was enacted that "the provisions of this act shall not apply to the

counties of Bamberg, Barnwell, Chester, Spartanburg, Fair-
field, Cherokee, Kershaw, Hampton and Beaufort, &c."
Sec. 8 repeals all acts or parts of acts inconsistent with this
act. This act, on March 3, 1899, 23 Stat., 9, was so
amended as to insert Charleston County in the list of ex-
cepted counties and to strike Spartanburg out of said list.
Then, on the 6th of March, 1899, another act was approved,
entitled "An act to amend an act entitled 'an act to provide
for the county government of the various counties of this
State,'" 23 Stat., 113. This act purports to re-enact and
amend the said act of 12 January, 1899, 23 Stat., 1. It pro-
vides that the county board of commissioners shall consist of
the supervisor and two commissioners to be appointed by the
governor. In sec. 4, provision is made for salaries of all the
county supervisors in the State, including Charleston, and
in sec. 6, provision is made for the selection and salary of a
clerk of said board in the counties named therein, including
Charleston County. Then, in sec. 8, it is enacted, "that the
provisions of this act, except those of sections 4 and 6, shall
not apply to the following named counties, to wit: Bamberg,
Barnwell, Beaufort, *Charleston,* Cherokee, Chester, Ker-
shaw, Hampton and Orangeburg;" and sec. 2 repeals all
acts or parts of acts inconsistent with this act. Assuming
the validity of the act of January 12, 1899, it is contended
in behalf of the defendant that said act abolished the offices
of county commissioners and township commissioners as
then provided by law to be appointed by the governor in all
the counties of the State except those mentioned in sections
7 and 9, and substituted in place of the abolished offices those
mentioned in sec. 2 of the act, and that Charleston being
among those excepted, became subject to the "Two Com-
missioners" act of January 12, 1899; and further, that the
act of March 3d, 1899, *supra,* assuming its validity, by ex-
cepting Charleston from the operation of the act of January
12, 1899, abolished the new county government act so far as
that county was concerned, and failed to provide any other
in its stead. But we do not so hold. The acts on this sub-

ject should be construed together, in order to ascertain the legislative intent. We think it clear that the purpose of the act of March 3, 1899, and March 6, 1899, *supra,* was to leave Charleston County subject to the act of 1894, *supra,* in the matter of the appointment and constitution of the county board of commissioners. The provision of sec. 37 of the Revised Statutes, viz: "The repeal of an act or joint resolution shall not revive any law theretofore repealed or superseded, nor any office theretofore abolished," does not apply. The effect of the act of January 12, 1899, and amending acts, was not to repeal, but to so amend the act of January 4, 1894, that in the matter of the appointment and constitution of the county board of commissioners in nine counties in the State, including Charleston County, the board shall be composed of the county supervisor and the chairmen of the boards of township commissioners appointed by the governor, while in the remaining counties (speaking generally), the county board shall be composed of the county supervisor and two commissioners to be appointed by the governor. Under this view, the county board of commissioners of Charleston County is legally constituted, having been appointed and organized as required under the act of 1894, in force in said county. This same result would follow, whether the act of January 12, 1899, *supra,* and the said amending acts, are unconstitutional as local or special legislation, or not. If the act of March 3, 1899, exempting Charleston County from the change proposed in the act of January 12, 1899, and the act of March 6, 1899, re-enacting and amending the act of January 12, 1899, and exempting Charleston County, are in conflict with art. III., sec. 34, of the Constitution, as special legislation, for the same reason the act of January 12, 1899, would be unconstitutional, since it exempts from its operation certain counties therein named, and in this event the act of January 4, 1894, known as the "John Gary Evans" act, would be still of force in Charleston County.

This perhaps renders it improper to consider the constitu-

14—61

tionality of said acts; but as one of the main objects of this proceeding is to obtain an expression from this Court on this subject, we will venture to state our view.    Art. III., sec. 34, of the Constitution provides: "The General Assembly of this State shall not enact local or special laws concerning any of the following subjects or for any of the following purposes, to wit: 1. To change the name of persons or places. 2. To lay out, open, alter or work roads or highways. 3. To incorporate cities, towns or villages, or change, amend or extend the charter thereof. 4. To incorporate educational, religious, charitable, social, manufacturing or banking institutions not under the control of the State, or amend or extend the charters thereof. 5. To incorporate school districts. 6. To authorize the adoption or legitimation of children. 7. To provide for the protection of game. 8. To summon and empanel grand or petit jurors. 9. To provide for the age at which citizens shall be subject to road or other public duty. 10. To fix the amount or manner of compensation to be paid to any county officer, except that the laws may be so made as to grade the compensation in proportion to the population and necessary service required. 11. In all other cases, where a general law can be made applicable, no special law shall be enacted. 12. The General Assembly shall forthwith enact general laws concerning said subjects for said purposes, which shall be uniform in their operations: *Provided*, That nothing contained in this section shall prohibit the General Assembly from enacting special provisions in general laws."

The legislation in question does not relate to any of the ten subjects enumerated above, being merely as to the number and manner of appointing the members of the county boards of commissioners in the various counties.    Does it fall under the 11th subdivision above, forbidding any special law where a general law can be made applicable?    If the act of January 12, 1899, and amending acts be construed as special acts, there is much authority for the view that under a provision like subdivision 11, it belongs to the legislative and

not the judicial department to determine whether a general law can be made applicable. *State* v. *Hitchcock,* 1 Kan., 178, 81 Am. Dec., 503; *State* v. *Boone County,* 50 Mo., 317, 11 Am. Rep., 415; *Indianapolis* v. *Navin* (Ind.), 47 N. E. Rep., 529; *Guthrie Nat. Bk.* v. *City of Guthrie,* 19 Sup. Ct. Rep., 515; 15 Am. & Eng. Ency. Law, 978, and cases cited. We incline, however, to the view that in this State it must be held a judicial question to determine when a general law can be made applicable; since under art. I., sec. 29, of the Constitution, it is ordained that the provisions of the Constitution shall be construed to be mandatory and prohibitory and not merely directory, except where expressly made directory or permissory by its own terms. Such question was treated as a judicial one in *State* v. *Higgins,* 51 S. C., 54, and in *Dean* v. *Spartanburg County,* 59 S. C., 110, whether compensation to county officers was graded in proportion to population and necessary service, under subdivision 10 above, was treated as a judicial question. As it is clearly manifest that a general law, as to the number who shall compose and the method of appointing the county board of commissioners, could be made applicable, if the act of January 12, 1899, *supra,* and amending acts are to be construed as special acts, they must fall under the inhibition of subdivision II. of sec. 34, art. III., of the Constitution, unless some other portion of the Constitution will support them. But, as we will now endeavor to show, the act of January 12, 1899, *supra,* should not be held a local or special act, prohibited by subdivision II., *supra,* but as the enactment of "special provisions in general laws," as authorized by the *proviso,* in subdivision 12 above. It may be regarded as settled that local or special statutes upon any of the ten enumerated subjects above will be declared void, and that the express prohibition of special legislation on said subjects shall not be practically nullified or evaded under any form or guise of legislation. *State* v. *Higgins,* 51 S. C., 51; *Dean* v. *Spartanburg Co.,* 59 S. C., 110; *Nance* v. *Anderson Co.,* 60 S. C., 501. But these cases do not determine the ques-

tion now being considered, as they related to legislation in reference to the expressly prohibited subjects; whereas the statute in question relates to the constitution or formation of the county board of commissioners, which is not among the enumerated subjects as to which special legislation is expressly prohibited. We find, however, this language in the opinion by Mr. Justice Gary, in Dean *v.* Spartanburg, which was approved in Nance *v.* Anderson County: "It is manifest from even a casual reading of the Constitution that 'local or special laws' and 'special provisions in general laws,' do not mean the same thing, and that they were intended to be construed in such a manner that neither would practically destroy the force of the other * * * In order that a law may be general, it must be of force in every county in the State, and while it may contain special provisions making its effect different in certain counties, those counties cannot be exempt from its entire operation." Under this construction of the Constitution, which we think is correct, the prohibition as to the enactment of local or special laws must not be held to practically nullify the right to enact special provisions in general laws. We think it safe to say that if it be competent for the legislature, while enacting a general law, to enact special provisions therein, it is also competent to enact similar special provisions by way of amending a general law. The former power would necessarily include the latter. The act of January 4, 1894, known as the "John Gary Evans" act, was adopted before the Constitution of 1895, and was the general county government law in force at the time of the enactment of the said "Two Commissioners" act of January 12, 1899. The said "Two Commissioners" act recognized the existence of the said general county government act; and although it does not in express terms purport to amend the "Evans" act of 1894, yet by necessary implication such is the purpose and effect. So that reading the statutes on the same subject *in pari materia*, it is clear that the legislature intended to provide a system of county government in all the counties of the State, but in car-

rying out this scheme it was deemed proper to make special provision as to the number and mode of appointment of those who were to constitute the county board of commissioners. Thus, under general statutes and by way of amending general laws, there is provided a county board of commissioners in every county in the State, with like jurisdiction in county governmental affairs, with a special provision enacting as to the formation of the county board in the various counties of the State.

There is another section of the Constitution which may be referred to as giving some support to the legislation in question, viz: sec. 11, art. VII., which provides: "Each of the several townships of this State with names and boundaries as now established by law shall constitute a body politic and corporate; but this shall not prevent the General Assembly from organizing other townships, or changing the boundaries of those already established; and the General Assembly *may* provide such system of township government *as it shall think proper* in *any* and all the counties, and may make *special* provision for municipal government and for the protection of chartered rights and powers of municipalities." This would seem to give the legislature discretion to provide a system of township government in *any* county of the State. It will be observed that the Evans act provides for a kind of system of township government with township officers, a township board of commissioners with township duties to perform, and the county board, as already said, is composed of the various chairmen of the township boards. If the legislature has power to adopt a system of township government for Charleston County, it, of course, has power to retain in said county such system of township government as was previously established. But further, in the section quoted, the legislature has discretion to make "special provisions for municipal government." It is no doubt true that the strict application of the term "municipal" would limit it to incorporated cities, towns and villages; but it is also true, it may properly be used in characterizing the govern-

ment of a county or township.  "Municipal corporations are administrative agencies established for the local government of towns, cities, counties or other particular districts, &c." Black Constitutional Law, p. 374.  In 15 A. & E. Ency. Law, 953, it is stated, "A municipal corporation in its broader sense is a body politic, such as a State and each of the governmental subdivisions of the State, such as counties, parishes, townships, hundreds, New England 'towns,' and school districts, as well as cities and incorporated towns, villages and boroughs.  Every one of these is properly susceptible of the general appellation."  This broad sense seems to have been the one intended in this particular section, whatever may be said of its use in other sections or articles; for the article containing it is devoted, as shown by its title, to "counties and county government," whereas art. VIII. is devoted to the government of cities and towns.  This section was evidently framed in view of the provisions of art. III., sec. 34, and was intended to give the legislature a wider latitude in the making of special provisions for county and township government.  At any rate, there is a reasonable doubt whether the framers of the Constitution intended to limit the powers of the General Assembly in the enactment of "special provisions" in reference to township and county government on subjects not expressly prohibited, and this is sufficient to resolve the doubt in favor of the constitutionality of the statutes in question, for the General Assembly has full power in all matters not clearly forbidden in the Constitution.

Having reached the conclusion that the county board of commissioners of Charleston County is legally constituted under the "Evans" act of 1894, it is the duty of the defendant treasurer to pay the warrant in favor of plaintiff properly issued, out of funds in his hands properly applicable thereto, and mandamus should issue to compel the performance of such duty.

It is, therefore, adjudged, that writ of mandamus shall issue as prayed for.