## STATE v. HAMMOND.

CONSTITUTION—SPECIAL LEGISLATION—MISDEMEANOR—ACT 23 ST., 448.
THE ACT, REV. STAT., 1275, as amended by 23 St., 448, making it a misdemeator to fail to remove a dam out of a running stream in certain counties after forty-eight hours' notice to remove, is in violation of Con. of 1895, art. III., sec. 34, as special legislation. The question whether an act is special legislation is a judicial one.

Before GAGE, J., Anderson, February, 1902. Affirmed.

Indictment against W. Q. Hammond for failure to remove a dam. From judgment of Sessions Court reversing judgment of magistrate dismissing prosecution, the State appeals.

*Messrs. Solicitor Boggs* and *B. F. Martin,* for appellant,
cite: *On the question decided:* 42 S. C., 230; 56 S. C., 516;
21 S. C., 420; 26 S. C., 348; 62 S. C., 28; 93 U. S., 23; 113
U. S., 27; 6 Ency., 2 ed., 967, 1020, 1021; 23 S. C., 56; 2
Black Con. Law, 294; 10 L. R. A., 178; 2 McC., 301; 53 S.
C., 278; 109 Mass:, 319; 30 N. H., 279; Tiedeman Pol.
Pow., 426, 427; 6 Cranch, 87; 64 N. H., 549.

*Messrs Tribble & Prince* and *Bonham & Watkins,* contra.
The latter cite: *On the question decided:* 56 S. C., 521; 42 L.
R. A., 438; 88 Ill., 554; 111 Ill., 532; 53 S. C., 285, 259;
49 S. C., 443.

May 11, 1903.   The opinion of the Court was deliv-
ered by

MR. JUSTICE JONES.   The defendant was arrested under a
warrant charging him with violating section 1275, R. S.,
1893, as amended by act of 1900, 23 Stat., 448, by main-
taining a rock dam on a running stream in the county of
Anderson, after forty-eight hours from notice to remove the
same.   A motion was made before the magistrate, C. P.
Kay, Esq., to dismiss the proceedings upon the ground that
said act is unconstitutional, is in violation of art. III., sec. 34,
of the Constitution, prohibiting local or special legislation.
The magistrate dismissed the proceedings upon the ground
stated.   Upon appeal by defendant, the Circuit Court dis-
missed the prosecution, holding that said act is unconstitu-
tional as special legislation.   From this judgment the State
now appeals.

The question, then, is whether said act is in violation of
art. III,, sec. 34, of the Constitution.   We are of the opinion
that the act is unconstitutional.   Sec. 1275, R. S., 1893,
reads as follows: "The cutting or felling trees into or across
any of the running streams of said counties (Anderson,
Beafort, Chester, Greenville, Oconee, Union, Fairfield, Lau-
rens, Newberry, Abbeville, Pickens, Spartanburg and York)
shall be deemed a misdemeanor, and any person so convicted

shall be punished by a fine of not less than five or more than twenty-five dollars, or imprisonment for not less than ten or more than thirty days, at the discretion of the Court." As this act was in force previous to the Constitution of 1895, and the provision of the Constitution not being retroactive do not affect it, the act in the foregoing form would not be obnoxious as local or special legislation. *State* v. *Tucker,* 54 S. C., 251, 32 S. E., 361. But the General Assemby, on the 19th February, 1900, adopted an act purporting to be an act amending the foregoing section, so as to make it read as follows—23 St., 448 : "The cutting or felling trees across or into any of the running streams of said counties (obstructing the same by throwing any timber or other materials therein, or erecting any dam across any such stream whereby the fall in such stream is lessened and the flow of water and sand is obstructed, or the land along said stream above such obstruction is damaged, or the health of the community is endangered, or having erected any such obstructions and refusing to remove the same within eight and forty hours after notice by any one to do so), shall be deemed a misdemeanor, and any person so convicted shall be punished by a fine of not less than five nor more than twenty-five dollars, or imprisonment for not less than ten nor more than thirty days, at the discretion of the Court (provided that nothing contained in this section shall apply to the construction of milldams, or dams for the purpose of generating power for any purpose)." The parts within the brackets placed by the writer of this opinion are those added to section 1275 by the amendment. By an act approved February 27, 1899, Cherokee County was included. Section 1275, as thus amended, now appears as section 182 of the Criminal Code, 1902, wherein the county of Beaufort is omitted. Is the legislation in question local or general? As shown in *Dean* v. *Spartanburg County,* 59 S. C., 114, 37 S. E., 226, and approved in subsequent cases, "in order that a law may be general, it must be of force in every county in the State." With respect to territory, a law is general when it applies

to the whole State, and local when it applies to only a part of the State.   With respect to persons and things, a law is general when it applies uniformly to all persons or things within a proper class, and special when it applies to only one or more individuals or things belonging to such class.   In the case of *State* v. *Berkeley,* 64 S. C., 194, this Court held the act, 23 Stat., 320, providing for drawing jurors in counties containing 40,000 inhabitants or more, was a general law, notwithstanding there was one county, Charleston, in which the conditions of the statute immediately existed, inasmuch as the law was intended to operate throughout the State in all counties then falling or thereafter to fall within the designated class of counties, or to all counties alike wherein the statutory conditions existed or should thereafter exist.   For example, a law protecting oyster beds by penalties is not local or special, but is general, even though there be few localities within the State where oyster beds exist, because the law operates throughout the whole State wherever and whenever the conditions named in the statute may exist.   Tested by these rules, the statute in question is local, because it is not intended to be operative throughout the State wherever the conditions named exist or may exist, but is expressly limited to certain counties.   Now, does this legislation fall within the principle stated in *Grocery Co.* v. *Burnet,* 61 S. C., 205, 39 S. E., 381, and can it be sustained as an amendment to a valid act?   We think not.   The legislation sustained in *Grocery Co.* v. *Burnet* was an act amendatory of a general act, the amendment containing a special provision in reference to the county government of Charleston County, and was upheld as falling within the proviso to art. III., sec. 34: "That nothing contained in this section shall prohibit the General Assembly from enacting special provisions in general laws."   The general act, with the amendatory matter incorporated in it, was such as the General Assembly had the power to enact under said proviso.   The test in such cases is whether the act as amended is such as the legislature could enact under art.

III., sec. 34, of the Constitution.   In the present case, both the original act and the amendatory act are local.   But as the subject of legislation is not one of the ten enumerated and prohibited subjects of special or local legislation, the question finally is whether the act under consideration can be sustained under subdivision 11 of said section and article, which provides: "In all other cases where a general law can be made applicable, no special law shall be enacted."

As it was not mentioned or questioned in argument, we do not decide, but assume that the word "special," as used in this clause, would properly characterize legislation of the kind in question.   But who is to finally determine whether a general law can be made applicable, the legislature or the judiciary?   In the cases of *State* v. *Higgins,* 51 S. C., 511, 28 S. E., 15; *Dean* v. *Spartanburg Co.,* 59 S. C., 110, 37 S. E., 226; *Nance* v. *Anderson Co.,* 60 S. C., 501, 39 S. E., 5, and *State* v. *McQueen,* 62 S. C., 247, 40 S. E., 513, where the legislation related to some one of the ten prohibited subjects of special or local legislation, the question was treated as a judicial one; and in the case of *Grocery Co.* v. *Burnet,* 61 S. C., 210, wherein the legislation considered was not one of the ten prohibited subjects of special or local legislation, this Court said: "If the act of January 12, 1899, and amending acts, be construed as special acts, there is much authority for the view that, under a provision like subdivision 11, it belongs to the legislative and not the judicial department to determine whether a general law can be made applicable.   *State* v. *Hitchcock,* 1 Kan., 178, 81 Am. Dec., 503; *State* v. *Boone Co.,* 50 Mo., 317; 11 Am. Rep., 415; *Indianapolis* v. *Navin* (Ind.), 47 N. E. Rep., 529; *Guthrie Nat. Bk.* v. *City of Guthrie,* 19 Sup. Ct. Rep., 515, 15 Am. & Eng. Ency. Law, 978, and cases cited.   We incline, however, to the view that in this State it must be held a judicial question to determine when a general law can be made applicable, since under art. I., sec. 29, of the Constitution, it is ordained that the provisions of the Constitution shall be construed to be mandatory and prohibitory and not

merely directory, except where expressly made directory or permissory by its own terms. Such question was treated as a judicial one in *State* v. *Higgins,* 51 S. C., 54, 28 S. E., 15; and in *Dean* v. *Spartanburg Co.,* 59 S. C., 110, 37 S. E., 226, whether compensation to county officers was graded in proportion to population and necessary service, under subdivision 10 above; was treated as a judicial question. As it is clearly manifest that a general law as to the number who shall compose and the method of appointing the county board of commissioners, could be made applicable, if the act of January 12, 1899, *supra,* and amending acts, are to be construed as special acts, they must fall under the inhibition of subdivision 11 of sec. 34, art. III., of the Constitution, unless some other portion of the Constitution will support them." While these expressions of the Court were made with reference to legislation on a subject not embraced within the ten prohibited subjects of special or local legislation, yet, inasmuch as the act under consideration in Burnet's case was construed by the Court not to be a special or local act, but a mere amendment to a general law, and falling within the power to pass "special provisions in general laws," as declared in the *proviso* to subdivision 12 of said section, it may be said that the views expressed in the foregoing extract are not binding as authority. We will, therefore, further consider the question. The view that the applicability of a general law is a legislative and not a judicial question, is strongly presented by Chief Justice Elliott, speaking for a bare majority of the Court in the case of *State* v. *Kolson,* reported in 14 L. R. A., 566, where the cases pro and con are cited in the notes to said case. The argument rests practically on the view that the legislature must necessarily exercise discretion in determining whether a general law is or can be made applicable, and that such discretion having been committed to the legislature, its action is final and not reviewable by the Courts. This view, however plausible, ignores the idea that the object of art. III., sec. 34, was to place a *limitation* upon the power of the legislature.

The evil sought to be remedied was the great and growing evil of special and local legislation. To remedy this evil such legislation was *absolutely* prohibited as to certain enumerated subjects, and *conditionally* prohibited as to all other subjects. In considering the effect of a constitutional limitation, it must be borne in mind that the legislative will is unlimited unless there is in the Constitution some express or necessarily implied restriction. If the intention is not to limit the power of the legislature, all that is necessary is for the Constitution to be silent. It must be assumed that the framers of the Constitution knew this. What, then, was the purpose of the clause under consideration? Was it to limit or restrict legislative power, or was it intended as a mere rule of caution or as a mere matter of moral persuasion? The fact that it was placed at all in the Constitution and in such prohibitive terms, shows that it was intended as a restriction upon legislative power, and the express declaration in art. I., sec. 29, "that the provisions of the Constitution shall be construed to be mandatory and prohibitory and not merely directory, except where expressly made directory or permissory by its own terms," forbids a construction which would reduce the provision to a mere matter of legislative discretion. If the provision is a limitation upon legislative power, then, under our form of government, the power must lie somewhere to enforce such limitation, and there can be but one answer to the question, where lies the power—in the judicial department. In determining whether a general law can be made applicable, the judiciary should indulge every presumption in favor of the legislative act, and so it should be presumed that the legislature by the special or local enactment thereby declared its view that the general law could not be made applicable. This conclusion, however, being to some extent at least a question of law, would no more bind the judicial department in enforcing a constitutional limitation than the legislative determination that a statute is *constitutional,* which is presumptively involved in the passage of every statute. In the case of *Fraser* v. *Jones,*

15—66

65 S. C., 83, sustaining the act creating Lee County, approved February 25, 1902, against an attack, that it violated art. VII., sec. 5, of the Constitution, as to the formation of new counties, which provided that "no old county shall be cut within eight miles of its court house building," this Court held in these words, "The Constitution imposed upon the legislature the duty of creating a new county when the specified conditions existed. No other tribunal having power to determine the existence of the condition under consideration, it was necessarily incumbent upon the legislature to determine for itself, whether such conditions existed as preliminary to the performance of the duty imposed upon the legislature by the Constitution in reference to the formation of new counties. The act to establish Lee County * * * recites that all conditions required by the Constitution and laws of the State for the formation of new counties have been complied with. That determination of the existence of such facts or conditions cannot be assailed in any Court by evidence *aliunde* impeaching the correctness of the same. The legislature had the power to determine such facts, and no fraud or deceit is imputable to a legislative body." It is not intended to recede at all from the rule stated, that whenever the legislature has power to determine the existence of certain facts essential to the performance of some duty imposed by the Constitution, Courts will not permit evidence *aliunde* assailing such conclusions of fact with a view to overthrow the legislation based thereon. But the applicability of a general law is not simply a question of fact, it involves matter of law; and it is not intended by this Court now to assert that when the legislature has said that a general law cannot be made applicable, that such conclusion may be controverted by any evidence outside of what appears upon the face of the statute, and upon such matters as to which a court must take judicial cognizance. Courts will take judicial notice of the division of the State into counties, their names, their locations with respect to each other, their population as shown by the United States census, the promi-

nent geographical features of the county, the principal water courses and their nature and location, matters of common knowledge and experience in respect to science and the ordinary operation of the forces of nature.    It should be further stated that the Court should not declare a statute unconstitutional unless the invalidity is manifest beyond a reasonable doubt.

With these principles in mind, we proceed to examine the statute to see whether it violates the Constitution.    The counties to which the statute relates constitute a section of the State lying north of the counties of Edgefield, Greenwood, Saluda, Lexington and Richland, and west of the counties of Kershaw and Lancaster; and at the time of the alleged offense, the county of Beaufort, lying in the extreme southern portion of the State, was included in the statute, all other counties in the State being excluded from the operation of the statute.    The conduct which is made a crime in these counties is the erection of any dam across any running stream in said counties whereby the fall in such stream is lessended and the flow of water and sand is obstructed, or the land along said stream above such obstruction is damaged, or the health of the community is endangered, or having erected any such obstruction and refusing to remove the same within forty-eight hours after notice to remove.    What possible reason can be assigned for making it a misdemeanor to so obstruct a running stream in Abbeville, while it would not be a misdemeanor to obstruct a running stream in the adjoining county of Greenwood?    Why should running streams in Lancaster be so obstructed with impunity while it is a crime to do a similar act in York or Chester?    A dam across a running stream in any part of the State would necessarily obstruct the flow of water and sand in said stream, and would ordinarily cause some damage to lands subject to the back water, and would as likely endanger the health of the community in one county as well as in another. In every county the same *kind* of injury or danger would necessarily or ordinarily result from such obstructions, even

though it be admitted that the *degree* of the injury or danger may not be the same. The nature of the conduct sought to be made punishable as crime is not such as to make it punishable in one part of the State and not in another. We speak of crimes against the State and not mere municipal offenses. If it be said that conditions in the included counties are peculiar and seem to call for penal legislation of the kind mentioned, still a general law could be made applicable to the whole State so as to operate wherever such conditions exist and whenever similar or like conduct takes place. No one would think for a moment that it would be competent for the legislature to make the burning of a tobacco warehouse or barn punishable as arson when committed in Darlington or Sumter or Florence, because the conditions in those counties make such legislation desirable, and then provide no punishment for like acts should they occur in other counties in this State, even though the conditions there are such as to render such burning very improbable. With the conviction that a general law could be made applicable to the subject under consideration, it is our duty to declare the said statute unconstitutional, under art. III., sec. 34, of the Constitution.

The judgment of the Circuit Court is affirmed.

Mr. CHIEF JUSTICE POPE *concurs in the result, as the decision in DeHay v. County Commissioners of Berkeley, is controlling.*

Mr. JUSTICE GARY *concurs in the result.* See opinion in *DeHay* v. *County Commissioners of Berkeley.*