6572

## BUIST v. CITY COUNCIL OF CHARLESTON.

1. CONSTITUTIONAL LAW—MUNICIPAL BONDS—CHARLESTON.—The act of 1907, authorizing City Council of Charleston to issue coupon bonds to pay present bonded debt about to mature does not purport to "change, amend or alter" the charter of the city of Charleston and is therefore not obnoxious to art. III, sec. 34, sub. III, of Constitution of 1895, but is a special provision to a general law—Code 1902, 2015-2019.

2. IBID.—Whether an act is obnoxious to that provision of the State Constitution prohibiting the passage of a special law where a general law can be made to apply is a legislative question.
   MR. JUSTICE JONES *dissents.*
   MR. JUSTICE WOODS *reserves his opinion.*

3. IBID.—STATUTES.—The act is not obnoxious to sec. 17, of art. III, of the Constitution, providing that every act shall relate to but one subject and that shall be expressed in the title, because the body is germane to the subject expressed in the title.

4. IBID.—IBID.—TAXES.—That exempting municipal bonds from taxation makes municipal taxes heavier on those owning no such bonds is no reason for prohibiting the exemption.

Application to this Court in its original jurisdiction for injunction by Henry Buist against City Council of Charleston.

*Mr. James Simons,* for petitioner.  Oral argument.

*Messrs. Geo. H. Moffett, Smythe, Lee & Frost* and *Miller & Whaley,* contra.  Oral argument.  After argument filed these additional authorities: 10 Am. Dig., sec. 130; 44 Am. Dig., sec. 77½; 13 S. E., 522; 31 At. R., 695; 83 P. R., 234; 59 Fed. R., 58; 39 P. R., 989; 45 Pac. R., 356.

## STATEMENT OF FACTS.

This is an application to the Court, in the exercise of its original jurisdiction, for an order enjoining the respondent from issuing certain bonds, on the ground that the following

act, which was approved on the 13th of February, 1907, is unconstitutional:

"An act to authorize the City Council of Charleston, S. C., to issue coupon bonds at a rate of interest not exceeding four per cent. per annum for the purpose of taking up or exchanging the four per cent. coupon bonds of said city maturing on January 1st and July 1st, 1909.

"Whereas, certain four per cent. coupon bonds of the city of Charleston, S. C., heretofore issued pursuant to law, will become due as follows, that is to say: One million four hundred seventy-four thousand seven hundred ($1,474,-700) dollars of said bonds on January 1st, 1909, and one million eight hundred seventy-seven thousand ($1,877,000) dollars of said bonds on July 1st, 1909; and

"Whereas, it is the desire of the City Council of Charleston, S. C., to provide for the payment or exchange of the said bonds so maturing, as aforesaid, by the issue of new bonds in the aggregate not exceeding the sum of three million three hundred and fifty thousand ($3,350,000) dollars, and bearing interest at a rate not exceeding four per centum per annum; now, therefore,

"Section 1. Be it enacted by the General Assembly of the State of South Carolina, That for the purpose of the payment or exchange of the four per cent. coupon bonds of the city of Charleston, S. C., maturing on January 1st and July 1st, 1909, the city council of Charleston, S. C., be, and they are hereby, authorized and empowered, from time to time, to execute and issue coupon bonds, payable in thirty years from their respective dates, to an amount not exceeding in the aggregate three million three hundred and fifty thousand ($3,350,000) dollars, said bonds to bear interest at a rate not exceeding four per centum per annum, payable semi-annually, and to be used and disposed of either by sale or exchange, for the purpose of refunding or paying, at not less than par, said four per cent. bonds maturing as aforesaid, and to bear date from the date of the payment or exchange of the said bonds for which they shall be respect-

ively issued, sold or exchanged. The principal and interest of said bonds shall be paid in any legal tender money of the United States.

"Sec. 2. That said bonds shall be exempt from all State, county or municipal taxes, and the coupon bonds shall be receivable in the payment of taxes due to the said city.

"Sec. 3. That so much of the capital stock or funds of any bank or banking association, located within the city of Charleston, S. C., as is or shall be invested in bonds of this issue, shall be exempt from all State, county, township, municipal or other taxation.

"Sec. 4. That the principal and interest of the said bonds shall be payable at such places as the city council may by ordinance provide."

On the 12th of March, 1907, the city council of Charleston passed an ordinance for the purpose of carrying into effect the provisions of said act.

The grounds upon which it was alleged that the act is unconstitutional, are thus set out in the petition:

Seventh. "That your petitioner alleges that the said respondent, the city council of Charleston aforesaid, has no right or power to issue and sell the said bonds for the following reasons:

A. "Because the said act of the General Assembly, entitled 'An act to authorize the city council of Charleston, S. C., to issue coupon bonds at a rate of interest not exceeding four per cent. per annum, for the purpose of taking up or exchanging the four per cent. coupon bonds of said city maturing on January and July 1st, 1909,' approved the 13th day of February, A. D. 1907, is unconstitutional in that it is in violation of article III, section 34, subdivision III of the Constitution of the State of South Carolina, which provides as follows, to wit: 'The General Assembly of this State shall not enact local or special laws, concerning any of the following subjects or for any of the following purposes: * * * 111. To incorporate cities, towns or villages or change, amend or extend the charter thereof.' * * * That

the said act approved the 13th day of February, A. D. 1907, in effect changes, amends and extends the charter of the said municipal corporation, in this that it changes, amends and extends its corporate power to the extent of the execution and issuance of said bonds, and that the said act of the General Assembly being obnoxious to the said provisions of the Constitution, the said act is invalid, as well as the said ordinance of the said city council, passed in pursuance thereof, and ratified in the 12th day of March, A. D. 1907.

B. "Because the said act of the General Assembly, approved the 13th day of February, A. D. 1907, is unconstitutional, in that it is in violation of article III, section 34, subdivison XI of the Constitution of the State of South Carolina, which provides as follows, to wit: 'The General Assembly of this State shall not enact local or special laws concerning any of the following subjects, or for any of the following purposes, to wit: * * * XI. In all other cases, where a general law can be made applicable, no special law shall be enacted.' That the said act approved the 13th day of February, A. D. 1907, is a special act relating only to the issuing of certain bonds to take up certain other bonds of a special municipal corporation; whereas a general law in all cases in relation to the issuing of bonds by municipal corporations to take up bonds thereof due or to become due, can be made applicable; and whereas, in fact, a general law has been made applicable to such cases by the adoption of sections 2015-2019, both inclusive, volume 1 of the Code of Laws of South Carolina providing how any city, town, township or other municipal corporation shall issue negotiable coupon bonds for the refunding or payment in whole or in part of its bonded indebtedness, and the said act of the General Assembly, approved the 13th day of February, A. D. 1907, being a special act for a case where a general law not only can be, but has been made applicable by the General Assembly, is invalid as well as the said ordinance of the said city council passed in pursuance thereof, and ratified on the 12th day of March, A. D. 1907.

C. "That the said act of the General Assembly approved the 13th day of February, A. D. 1907, cannot operate as a special provision in the general law, as provided in sections 2015-2019, both inclusive, of volume 1 of the Code of Laws of South Carolina, under subdivision XII, of section 34, of article III, of the Constitution of this State, which provides as follows: 'The General Assembly shall forthwith enact general laws concerning said subjects for said purposes, which shall be uniform in their operations: *Provided,* That nothing contained in this section shall prohibit the General Assembly from enacting special provisions in general laws;' because the said act of the General Assembly, approved the 13th day of February, A. D. 1907, does not purport and was not intended, as shown on its face, to be an amendment to said general law, and even if it be held that the said act of the General Assembly, approved the 13th day of February, A. D. 1907, can operate as an amendment to the general law, as provided in sections 2015-2019, both inclusive, of volume 1, of the Code of Laws of South Carolina, for the issuing of negotiable coupon bonds for any city, town, township or other municipal corporation for the refunding or payment in whole or in part of its bonded indebtedness, that even in that case it would be unconstitutional and invalid, because obnoxious to the provisions of article III, section 17, of the Constitution of this State, which provides that every act or resolution having the force of law shall relate to but one subject, and that shall be expressed in the title.' Whereas, there is nothing in the title of said act to indicate that it was intended to operate as such an amendment, but on the contrary the purpose of the act as expressed in its title relates to another and different subject.

D. "That by the said act of the General Asesmbly, approved the 13th day of February, A. D. 1907, it is enacted in section 2 thereof, that the said bonds shall be exempt from State, county or municipal taxes, and the coupons shall be receivable in the payment of all taxes due to the said city, and your petitioner respectfully submits, that if it be

held that the said act is in violation of article III, section 34, subdivisions III and XI, and is not operative under article III, section 34, subdivision XII, the said exemption of said bonds from taxes, as provided in section 2 of said act, approved the 13th day of February, 1907, cannot operate as a special provision in the general law, as set forth in sections 2015-2019, both inclusive, of volume I, of the Code of Laws of South Carolina, for the reason that the title of the act would not comply with the requirements of section 17 of article III, of the Constitution of this State, which provides that 'every act or resolution having the force of law shall relate to but one subject, and that should be expressed in the title.'

E. "That the exemption of the said bonds from taxes, as provided by the second section of the said act, approved 13th February, A. D. 1907, is invalid for the following reasons, namely: even if not repugnant to the first and fourth sections of the tenth article of the Constitution of this State, yet the said act of the General Assembly, approved 13th February, A. D. 1907, being invalid for the reasons hereinbefore set forth, the said exemption from tax-action is also invalid, because municipal bonds in this State could in any event only be exempted by the terms of the act under which they may be issued, and if the act under which they are attempted to be issued be invalid, then the exemption is also invalid.

F. "Further, that the said bonds proposed to be issued by the said respondent on behalf of and in the name of said municipal corporation declare that they are issued pursuant to the authority conferred by the said act of the General Assembly, ratified the 13th day of February, A. D. 1907, and consequently if the said act of the. General Assembly, approved the 13th day of February, A. D. 1907, be invalid for any reason, the said respondent has no right on behalf of and in the name of the said municipal corporation, to execute and issue said bonds under the provisions of law

set forth in sections 2015-2019, both inclusive, of volume 1 of the Code of Laws of this State.

Eighth. "That it is important to your petitioner, and to the other taxpayers of said city of Charleston, that the said respondent, the city council of Charleston, be restrained and enjoined from issuing the said bonds in accordance with the said act of the General Assembly, approved the 13th day of February, A. D. 1907, and the said ordinance of the city council of the city of Charleston passed pursuant thereto, for the reason that the contract sought to be made by said bonds exempts the said bonds from taxation, thus throwing a heavy burden of taxation on your petitioner and other taxpayers in said city of Charleston, who are not owners of the said bonds."

The respondent made a return in the form of a demurrer to the petition and order to show cause, on the ground that the petitioner does not state facts sufficient to constitute a cause of action: "In that it doth appear, upon examination of and reference to the several important parts of the petition, by paragraph and number, for purposes of convenience and certainty:

"First as to paragraph seventh, A.

"That the said act of February, 1907, does not 'change, amend or extend' the charter of the city of Charleston, in the sense and meaning of art. III, sec. 34, sub. III of the Constitution of this State; but merely points out the mode and manner of refunding and discharging the existing bonded debt the city had long since and before the Constitution of 1895 been empowered to contract and had contracted; and that the said debt was outstanding and should be repaid or refunded.

"That said act made no addition to the enumerated or implied corporate faculties of the city, nor to its powers to contract any new obligations.

"Second: As to paragraph seventh, B.

"The said act of February 13th, 1907, does not violate or conflict with article III, section 34, subdivision XI of the

Constitution of this State, prohibiting the passage of a special or local law, 'where a general law can be made applicable.' because

"(a) The existing indebtedness of the city of Charleston having been duly authorized and enacted long prior to the said Constitution of 1895, and the providing for its funding or payment requiring peculiar recitals of fact and enactments of law, the same could only and best be done by a special law, no general law being applicable thereto, in the sense contemplated by the said Constitution, and the laws of this State passed thereunder.

"(b) The power of the legislature in this respect is authorized by section 11, article VII, of the Constitution, which provided, 'Each of the several townships of this State, with names and boundaries, as now established by law, shall constitute a body politic and corporate; but this shall not prevent the General Assembly from organizing other townships, or changing the boundaries of those already established; and the General Assembly may provide such system of township government as it shall think proper in any and all the counties, and may make special provisions for municipal government and for the protection of charter rights and powers of municipalities.'

"Third: As to paragraph seventh, C.

"(1) That said act of February 13th, 1907, does not depend for its force and validity upon its being a special provision in the general law existing under sections 2015-2019, inclusive, of volume 1, Code of Laws of this State. But that if it so depends, the said act and its provisions or essential and complete parts thereof, could be combined together with and as part of said sections of the Code of Laws.

"(2) And that so construed, it would not be repugnant to article III, section 17, of the Constitution; nor would it as a part of such general law relate to more than one subject expressed in the title thereof.

"Fourth: As to paragraph seventh, D. (and also E., the latter appearing on examination to be a mere legal conclusion). That the said bonds are, in said act of February 13th, 1907, legally exempt from taxation, whether

"(a) By the terms of the said act itself regarded as a necessary and legal special act; or

"(b) Construed as a part and special provision of the general laws of this State, passed under and in obedience to the Constitution; and especially sections 2015-2019, inclusive, of volume 1, Code of Laws, and section 266 of said volume 1.

"(c) And that the title of said act does not offend the constitutional provision. That such sections construed together, and with reference to the provisions of the Constitution bearing on the subject of municipal bonded debts and their creation and exemption from taxation, clearly show and justify the constitutional necessity and legality of the act of February 13th, 1907 (and similar acts) as being contemplated and directed by the Constitution. And this Court has already so held and declared.

"Fifth: As to paragraph seventh, F.

"That for the reasons already given, and as a consequence therefrom, the said bonds, even if not issuable under the act of February 13, 1907, would be good and valid under the powers of the city of Charleston, otherwise derived from its charter, and from the other existing law of this State, and especially sections 2015-2019, inclusive, and section 266, of volume 1, of Code of Laws.

"And respondent, relying on this, its demurrer, and on the grounds involved therein, or as they may further appear on the argument, makes this as its return.

"And it prays that the said petition be dismissed."

## OPINION.

July 2, 1907. The opinion of the Court was delivered by

MR. JUSTICE GARY (after stating the facts). The main purpose of the act seems to have been to provide for the

exemption of said bonds from taxation, as there was already a general law conferring upon municipalities power to fund their indebtedness. Code of Laws, section 2015 *et seq.*

The first of said grounds which will be considered is that which raises the question whether the statute is obnoxious to article III, section 34, subdivision III of the Constitution.

That section is as follows: Section 34. "The General Assembly of this State shall not enact local or special laws concerning any of the following subjects or for any of the following purposes, to wit: * * * III. To incorporate cities, towns or villages, or change, amend or extend the charter thereof. * * * XI. In all other cases, where a general law can be made applicable, no special law shall be enacted "          .

It will be observed that the act does not purport to change, amend or extend the charter of the city of Charleston, and the words "change," "amend or extend" might more appropriately be applied to the general law hereinbefore mentioned than to the charter of said city, in which case it would not be a local or special law, but the question would be whether it was a special provision in a general law, which is hereinafter considered.

The next question for consideration is whether the act was unconstitutional, on the ground that it was in violation of article III, section 34, subdivision XI of the Constitution, which provides, that where a general law can be made applicable no special law shall be enacted.

The views which the Court entertains upon this question are thus stated in the opinion of Mr. Justice Gary, in the case of *DeHay* v. *County Commissioners*, 66 S. C., 229, 44 S. E., 190: "We will lastly discuss the right of the General Assembly to determine whether it was advisable to enact a general or special law. The rule of construction is different for determining whether a special act is obnoxious to the provisions of the Constitution, that where a general law can be made applicable, no special law shall be enacted, and for

determining whether such act is unconstitutional, on the ground that it concerns one of the prohibited subjects mentioned in the Constitution.   One involves a legislative, the other a judicial question.   The following authorities show that whether a general law can be made applicable, is a question to be decided by the legislature.   15 Ency. of Law, 978, which says: "The Constitutions of many States provide that no special or local law shall be passed when a general law can be made applicable.   Under such provisions, it is a question for the legislature exclusively, whether a general law can or cannot be made applicable in a certain case,' citing numerous authorities in the note on that page. *Guthrie Nat. Bk.* v. *City of Guthrie,* 19 Sup. Ct. Rep., 513, in which the Court uses this language: 'It is claimed that it violates the act of Congress, approved July 30, 1886 (24 Stat., 170, c. 818), prohibiting the passage of local or special laws in the territories.   The act, among other things, provides that where a general law can be made applicable, no special law shall be enacted in any of the territories of the United States, by the territorial legislatures thereof, and it also provides that the territorial legislatures shall not pass local or special laws in any of the cases therein enumerated, among which is a law to regulate the practice in Courts of justice.   Both of these provisions are said to have been violated in the passage of the act in question. Whether a general law can be made applicable to the subject matter, in regard to which a special law is enacted by a territorial legislature, is a matter which we think rests in the judgment of the legislature itself.   *State* v. *Hitchcock,* 1 Kan., 184.   That body is especially prohibited from passing any local or special law in regard to certain subject enumerated in the act.   Outside and beyond that limitation is the provision above mentioned, and whether or not a general law can be made applicable to the subject, is a matter which is confined to the judgment of the legislature.'

"*Terre Haute* v. *Kolsem,* 14 L. R. A. (Ind.), 566.   The opinion in this case is entitled to great consideration,

because it was written by that eminent jurist and distinguished Chief Justice, Elliott. The Court says: 'If the enactment of such a law as the one before us is forbidden, it must be by virtue of section 23, of article IV, of the Constitution, for the subject embraced in the act is not included in the enumeration found in the preceding section. But section 23, as has been again and again decided, does not prohibit the enactment of special laws, where general ones cannot be made applicable. It has also been repeatedly held that whether a general law can be made applicable to a particular subject, is exclusively a legislative question, and it necessarily results, that if the question is legislative, the whole matter, with all its incidents, must be determined by the legislature. If the question is legislative, then it is undisputably true that it is excluded absolutely and entirely from the domination of the judiciary. It is inconceivable that the question can be dissected into fragments, and one part assigned to one department of government and another part to a different department. Under our system of goverment, the departments are distinct and independent; there is no such thing as a power partly judicial and partly legislative. * * * As the question whether a general law can be made applicable is exclusively legislative, the incidents of the main question are necessarily and entirely legislative. Where the principal subject belongs, there the incidents belong. Means, methods and the like belong to the department that is invested with power over the general subject. It is for that department to make choice of modes and means, and as the Supreme Court of the United States has said, "It is master of its own discretion." The cases, however, which decide that this is a legislative question, nevertheless recognize and approve the doctrine that the question is judicial when the legislation concerns one of the prohibited subjects mentioned in the Constitution.' In the case of *Carolina Grocery Co.* v. *Burnet,* 61 S. C., 205, 39 S. E., 381, 58 L. R. A., 687, Mr. Justice Jones says: 'Such question was treated as a judicial one in *State* v.

*Higgins,* 51 S. C., 54, 28 S. E., 15; and in *Dean* v. *Spartanburg Co.,* 59 S. C., 110, 37 S. E., 226, whether compensation to county officers was graded in proportion to population and necessary service, under subdivision 10 above, was treated as a judicial question.' To the foregoing cases should be added *Nance* v. *Anderson County,* 60 S. C., 501, 39 S. E., 151. We do not regard the question as longer open in this State, after the decisions just mentioned. The reason of the difference in the rule is that in one case the Constitution clearly defines the limitation upon legislative action, while in the other the subject is confined to the discretion of the legislature. There is no rule of law by which the Courts can determine whether a necessity exists for the passage of a general law on the subject, but the Courts can determine whether a special act concerns any of the prohibited subjects mentioned in the Constitution. If the Courts should undertake to decide whether a general law could be enacted, it would only substitute its ideas of expediency for those of the legislature upon a question peculiarly appropriate for the consideration of the legislative department of the government."

We proceed next to consider the objection to the constitutionality of the act on the ground that it cannot operate as a special provision in the general law as provided in sections 2015-2019, Vol I., of the Code of Laws. The case of *Grocery Co.* v. *Burnet,* 61 S. C., 205, 39 S. E., 381, 58 L. R. A., 687, conclusively shows that this objection cannot be sustained.

The next question is whether the act was in violation of the requirements of Article III., Section 17, of the Constitution, which provides that "every act or resolution having the force of law shall relate to but one subject, and that shall be expressed in the title." This case falls within the principle that an act is not subject to the objection interposed, when the body is germane to the subject expressed in the title thereof. *Connor* v. *R. R.,* 23 S. C., 487; *Floyd* v. *Perrin,* 30 S. C., 1, 8 S. E., 14; *Riley*

v. *Union Station,* 71 S. C., 486, 51 S. E., 485; *State* v. *O'Day,* 74 S. C., 448; *Parks* v. *Laurens Cotton Mills,* 75 S. C., 560.

The objections urged in specifications "E," and "F" cannot be sustained, for the reason that they erroneously assume, that the act under which it is proposed to issue the bonds is invalid.

The objection stated in the eighth paragraph of the petition must be overruled, as such result is incidental to all exemptions of property from taxation. No case has been cited to show that such objection has ever rendered a statute unconstitutional.

It is the judgment of this Court, that the application be refused and the petition dismissed.

MR. JUSTICE JONES. I concur in the judgment. I agree in the view that the act in question, read in connection with the general statute, sections 2015-2019, covering the same subject, may fairly be construed as a special provision in a general law and, therefore, not obnoxious to Section 34, Article III, of the Constitution. *Grocery Co.* v. *Burnet,* 61 S. C., 205, 39 S. E., 381, 58 L. R. A., 687. Having determined that the act in question is a special provision in a general law, it is unnecessary to consider whether it may be sustained as a special act in a case where a general statute cannot be made applicable. That a general statute with special provisions can be made applicable is made manifest by the fact that such has already been done. But I am unable to assent to the view that it is exclusively for the legislature to determine whether subdivision XI, Section 34, Article III, has been violated. The provision in question is an express limitation on legislative power. It is not merely directory or permissive, but is plainly mandatory. Whether it has been violated is essentially a question of law for the judicial department. But my views on this subject are fully expressed in *Grocery Co.* v. *Burnet,* 61 S. C., 205, 39 S. E., 381, 58 L. R. A., 687, and *State* v. *Hammond,* 66 S. C., 219, 44 S. E., 797, and I will not elaborate them here.

18—77

The exemption of the bonds from taxation as provided in Sec. 2 of the act is supported by the case of *Chester County* v. *White,* 70 S. C., 443, 50 S. E., 28.

Mr. Justice Woods. I concur in the result. It clearly appears from the opinions of Justices Gary and Jones, the validity of the statute now in question, authorizing the issue of bonds, does not depend on any right of the General Assembly to decide for itself what legislation is forbidden by the constitutional provision "Where a general law can be made applicable, no special law shall be enacted." For this reason I reserve my opinion on this important point.