STATE v. HIGGINS.

1. CONSTITUTION—FISHING.—The act entitled "An act to further regu-
late fishing for profit in the waters of this State," 22 Stat., 218, is
contrary to the provisions of art. I., sec. 5, and art. III., sec. 34, subs.
VII. and XI., of Constitution of 1895.
2. ARREST—WARRANT—CONSTITUTION.—An arrest made under a war-
rant based on a statement of facts supported neither by oath nor
affirmation, is illegal, and contrary to art. I., sec. 16, of Con. 1895.

Petition by Peter Higgins, in the original jurisdiction of
this Court, for writ of *habeas corpus.* Writ granted, and
petitioner discharged by order of this Court, April 29, 1897.

*Mr. Huger Sinkler*, for petitioner.

*Mr. Assistant Attorney General Townsend*, contra.

Oct. 23, 1897. The opinion of the Court was delivered by

MR. CHIEF JUSTICE MCIVER. This was an application,
addressed to this Court, in the exercise of its original juris-
diction, by the defendant, for a discharge under a writ of
habeas corpus. It appears from the sheriff's return to the
writ that the defendant was committed to his custody, "By
virtue of an order of arrest for the violation of act No. 98,
laws of 1896, in that being a citizen of the county of Char-
leston, he did catch fish for profit in the waters of Berkeley
County, to me directed, a copy of which, annexed, I trans-
mit to you."

The only question made at the argument of the case was
whether the act mentioned was in violation of the Consti-
tution. It was contended, on the part of the defendant,
that the act in question violated two of the provisions of
the Constitution, which went into effect "from and after the
thirty-first day of December, in the year of eighteen hun-
dred and ninety-five." These two provisions are: *First.*
section 5 of art. I., which reads as follows: "The privileges
and immunities of citizens of this State and of the United

States, under this Constitution, shall not be abridged, nor shall any person be deprived of life, liberty or property, without due process of law, nor shall any person be denied the equal protection of the laws." *Second.* Section 34 of art. III., which contains, amongst others, the following provisions: "The General Assembly of this State shall not enact local or special laws concerning any of the following subjects, or for any of the following purposes, to wit: * * * To provide for the protection of game. In all other cases, where a general law can be made applicable, no special law shall be enacted."

The act of 1896 (22 Stat., 218), which is claimed to be in violation of these two sections of the Constitution, is entitled "An act to further regulate fishing for profit in the waters of this State," and contains the following provisions: Sec. 1. "That after the passage and approval of this act, it shall not be lawful for a citizen of one county to fish for profit in the waters of another county, without first obtaining therefor from the treasurer of the county in which he intends to so fish, a license to do so." The second section simply prescribes the price of such license, and the fund to which it shall be appropriated, and, therefore, is not pertinent to the present inquiry. The third section of the act reads as follows: "That this act shall not apply to any counties in this State other than the counties of Colleton and Berkeley." The fourth section of the act provides the punishment for violating the provisions of the act, and its terms throw no light upon the question which we are to determine. The terms of this act are peculiar; for while its title and the provisions of the first section clearly make it a general law, applicable to fishing in any of the waters of this State, within any of the counties of the State, the provision in the third section expressly confines its operations to the two counties therein specified, thereby clearly making the act a local or special law.

There is another peculiarity about this act. The phraseology employed in the third section leaves it at least doubt-

ful whether the intention was to prohibit the citizens of Colleton and Berkeley Counties alone from fishing for profit in the waters of any other county without a license, as would seem to be the logical inference, inasmuch as the terms of the first section expressly apply to the citizens of every county in the State, which, by the terms of the third section, are limited to the counties of Colleton and Berkeley—that is, to the citizens of those two connties—leaving the citizens of all the other counties at liberty to fish anywhere without a license; or whether the intention was to prohibit the citizens of every other county from fishing for profit in the waters of Colleton and Berkeley without a license. Assuming the latter to be the real intention of the act, as we think it likely was the case, we will consider the question in that aspect. Taking that view of the act, it will be observed, that while it forbids the citizens of every county in the State, except those of Colleton and Berkeley, from fishing in the waters of those two counties without a license, there is nothing in the act to forbid the citizens of Colleton and Berkeley from fishing in the waters of every other county in the State without a license. This is a discrimination in favor of the citizens of Colleton and Berkeley Counties, and is in conflict with that clause of the Constitution, quoted above, declaring that no person shall be denied the equal protection of the laws.

But, again, if, as we have seen above, this act is a local or special law, it violates the provisions of sec. 34 of art. III., cited above, provided it concerns any of the subjects, or is for any of the purposes mentioned in that section. The manifest object of the act was to protect fish in the waters of Colleton and Berkeley Counties, and if fish can be regarded as game, then being a local or special law providing for the protection of game, it is in conflict with the section of the Constitution last referred to, for that section expressly forbids the enactment of any local or special law "to provide for the protection of game." The authorities clearly show that fish can and should be classed as game.

In 8 Am. & Eng. Ency. of Law, at page 1023, it is said: "Animals pursued and taken by sportsmen are designated as game." And in a note on the next page of that valuable work, it is said: "Game includes wild bees and fish," citing Cooley on Torts (1880), 435. So in Blackstone Com., in book II., chap. XXX., that standard author, in speaking of animals *feræ naturæ*, classes fish with deer, pheasants, partridges, &c. So in Kent's Com., part V., lecture XXXV., the same classification is made. It is obvious, therefore, that the act in question is in conflict with sec. 34 of art. III. of the Constitution.

It seems to us, also, that the act in question, viewed in the light contended for by the State, must be regarded as in violation of another subdivision of sec. 34 of art. III. Subdivision XI. of that section declares that: "In all other cases, where a general law can be made applicable, no special law shall be enacted." It is very clear that this is a case where a general law could have been made applicable. This is conclusively shown by the terms of the first section of this very act, which, if it stood alone, would have been a good general law; but when the legislature saw fit, by the provision in the third section, to limit its operation to certain specified localities, the act was deprived of its character as a general law, and became a special or local law concerning a subject, and for a purpose expressly forbidden by the Constitution.

There is another view of this case, which, though not mentioned in the argument, may be considered by us, as this is not a case of appeal, but a case in the original jurisdiction of this Court; and this view is absolutely conclusive of the defendant's right to a discharge from custody. The Constitution, in sec. 16 of art. I., forbids the issuing of any warrant for the arrest of any person except upon probable cause, supported by oath or affirmation. In the case of *The State* v. *Wimbush*, 9 S. C., 309, it was held that a warrant issued on a statement of facts not sworn to is unconstitutional, null, and void, and that it was

not unlawful to resist an officer attempting to arrest one under an illegal warrant. Now, from the papers accompanying the sheriff's return to the writ of *habeas corpus*, and referred to in the return, it is manifest that the warrant under which the defendant was arrested was not supported either by oath or affirmation, and the arrest was, therefore, illegal, and the sheriff had no lawful authority to retain him in custody. For this, if for no other reason, the defendant was clearly entitled to his discharge.

In accordance with these views, an order has heretofore been granted, discharging the defendant from custody.