DeHAY v. COUNTY COMMISSIONERS OF BERKELEY.

1. CONSTITUTION—SPECIAL ACTS—COUNTY SUPERINTENDENT OF EDUCATION.—THE LEGISLATURE cannot by a local and special act passed after the Con. of 1895 amend a local and special act passed before the Constitution, when both relate to a subject prohibited by art. III., sec. 34, of Con. Hence the acts of 22 St., 874, and of 23 St., 170, 294, amending the act of 21 St., 985, providing salary for county school commissioners for Berkeley County, are void.
   MR. CHIEF JUSTICE POPE *dissenting.*
2. IBID.—IBID.—GENERAL ACTS.—Is the question whether a general or a special act can be made applicable judicial or legislative?

Before KLUGH, J., Berkeley, November, 1901.   Affirmed.

Claim by A. H. DeHay, county superintendent of education, against County Commissioners of Berkeley County. The order of Circuit Court reversing action of commissioners is as follows:

"By an act of the General Assembly, entitled 'An act to amend section 1 of an act entitled an act to regulate the fees and duties of the county officers of Berkeley County,' approved January 5, 1895, it was provided that 'the county officers of Berkeley County shall receive * * * annual salaries as follows, to wit: * * * The school commissioner, four hundred dollars.' This act was amended in 1898 by reducing the salary of the school commissioner to three hundred dollars, and in 1899 again by striking out the words 'school commissioner,' and inserting in lieu thereof the words 'county superintendent of education,' still retaining the provision fixing the salary at three hundred dollars. By an act entitled 'An act relating to fees and salaries of the county officers of the several counties of this State,' approved February 19, 1900, it was provided that as to Berkeley County 'the officers shall receive annual salaries as follows: * * * county superintendent of education, three hundred dollars.' On February 2, 1901, the appellant presented his account to the county commissioners of Berkeley County 'for

salary month January, C. S. E., $25.00.' This account was
duly approved and paid. On March 4, 1901, the appellant
again presented his account, 'To services as superintendent
of education, $25,' and this account was also duly approved
and paid. On April 1, 1901, the appellant presented to the
same authorities his account 'for quarter ending March 31st,
1901, for salary as county superintendent of education, $50.'
This account was rejected by the said county commissioners
on the ground, stated broadly, that the salary of the super-
intendent of education for Berkeley County is twenty-five
dollars per month, as fixed by law. There is nothing in the
position taken by the board of county commissioners that the
appellant is estopped by having received payment of the two
preceding accounts of $25 each, to now claim more than $25
per month as his salary. It may be assumed that his con-
tract on taking the office of county superintendent of educa-
tion was to perform its duties for the compensation fixed
by law. Every act on the subject declares that the compen-
sation shall be an *annual* salary, and no provision is made for
payment by the month or otherwise. The fact that the
appellant has received a certain sum per month may imply
some arrangement to the effect that he is to be paid that
much of his *annual* salary each month, but it cannot establish
an agreement on his part to serve for less or different com-
pensation than that allowed and fixed by law. In order to
establish such an agreement as that last mentioned, which
would operate as an estoppepl against the appellant, there
must be an express contract or one by necessary implication
from the circumstances of the case—neither of which is
shown by this record.

"We come, then, to the real question raised by this appeal,
to wit: What is the salary fixed by law for the county super-
intendent of education of Berkeley County? The county
commissioners claim that it is $25 per month, or what, for
the purposes of this question, is the same thing, $300 per
annum. The appellant herein contends that it is $400 a
year, and in so doing attacks the validity of the three acts

above cited, of 1898, 1899 and 1900, which fix the salary at $300, on the ground that they are in conflict with the provisions of sec. 34, of art. III., of the Constitution. The constitutional provisions thus invoked which are applicable to this case are as follows: 'The General Assembly of this State shall not enact local or special laws concerning any of the following subjects, or for any of the following purposes, to wit: * * * 10. To fix the amount or manner of compensation to be paid to any county officer, except that the laws may be so made as to grade the compensation in proportion to the population and necessary service required. 11. In all other cases, where a general law can be made applicable, no special law shall be enacted.' In reference to the act of 1900, before cited, it is sufficient to say that it has already been twice adjudged null and void, because in conflict with the constitutional provisions above recited. *Dean* v. *Spartanburg County,* 59 S. C., 110; *Nance* v. *Anderson County,* 60 S. C., 501. We proceed, therefore, to the consideration of the acts of 1898 and 1899, in connection with these inhibitions of the Constitution. The provisions of these two acts are, so far as they affect the question at issue, practically identical. The act of 1898 fixed the salary of the *school commissioner* of Berkeley County at $300, and the act of 1899 merely changed the name *'school commissioner'* into *'county superintendent of education,'* so as to conform to the change or designation of the office theretofore made by statute. Both acts purpose to amend the act of 1894, first above cited. This last act fixed the salary of the school commissioner of Berkeley County at $400, and having been enacted prior to the ratification of the present State Constitution of 1895, remained of force until altered or repealed by subsequent legislation.

"In the case of *Carolina Grocery Company* v. *Burnet, county treasurer,* 61 S. C., 205, it is declared at page 211 that 'it may be regarded as settled that local or special statutes upon any of the ten enumerated subjects (of section 34) above will be declared void, and that the express pro-

hibition of special legislation on said subjects shall not be practically nullified or evaded under any form or guise of legislation." The same case recognized the distinction made in the Constitution between 'local or special laws,' which are expressly prohibited, and 'special provision in general laws,' which it is provided that nothing contained in said section 34 or article III. shall prohibit the General Assembly from enacting; and it is held that a statute which may fairly be construed to be a special provision in a general law, though enacted subsequent to the passage of such general law, and amendatory thereof only by implication, is an exercise of legislative power not prohibited by said section of the Constitution. Conversely, it would seem that a local or special statute on one of the inhibited subjects, even though in the guise of an amendment to an antecedent statute, if the latter be itself a local or special statute, cannot be sustained, for it is a special provision on a prohibited subject in a special law. In this view the amendatory acts of 1898 and 1899, hereinbefore set forth, must be held to be in violation of the constitutional provisions above cited, and, therefore, null and void. It follows that the act of 1894, fixing the salary of the school commissioner, now county superintendent of education, of Berkeley County, at four hundred dollars per annum, is the statute now of force.

"It is, therefore, ordered and adjudged, that the exceptions of the appellant be and the same are hereby sustained, the decision of the county commissioners appealed from be and the same is hereby reversed, and the claim thereby disallowed be and the same hereby is allowed and adjudged to the appellant, and the cause be remanded to the said county commissioners, with instructions which are hereby given to them to approve and pay the said claim of the appellant, and that the appellant have leave to take such steps as may be necessary or he may be advised to enforce this judgment."

From this decree the county commissioners appeal on the following exceptions:

"First. Because his Honor, Judge Klugh, erred in considering other testimony, not before the county commissioners.

"Second. Because his Honor, Judge Klugh, erred in holding that the acts of 1898 and 1899, were unconstitutional, null and void.

"Third. Because his Honor, Judge Klugh, erred in holding that the respondent was entitled to a salary of four hundred dollars, under the act of 1894.

"Fourth. Because his Honor, Judge Klugh, erred in holding that the salary of the respondent could be fixed under the act of 1894.

"Fifth. Because his Honor, Judge Klugh, erred in not dismissing the appeal."

*Messrs. Dennis & Dennis* and *Burke & Erckmann,* for appellants, cite: *The Circuit Court erred in considering the acts of 1898 and 1899:* 42 S. C., 321; 27 S. C., 9; 40 S. C., 276. *These acts are not unconstitutional:* 34 S. C., 104; 23 Ency., 276; 4 N. Y. Supp., 308; 23 S. E. R., 984; 41 S. C., 220; 59 S. C., 110; 60 S. C., 501; 61 S. C., 205.

*Mesrs. R. W. Haynes* and *Simeon Hyde,* contra, cite: *The acts 1898 and 1899 are unconstitutional:* 51 S. C., 51; 59 S. C., 110; 60 S. C., 501; 61 S. C., 205.

May 11, 1903.    The first opinion was delivered by

Mr. Chief Justice Pope.    The question raised in this appeal is: what was the salary of the county superintendent of education for Berkeley County, in this State, in the year 1901?    The appellant insists that it is the sum of $400 *per annum.*    The basis upon which the respondent rests his case is that the act passed by the General Assembly of this State, approved on the 5th January, 1895, 21 Stat., 985, gave to the officer known as the school commissioner of Berkeley County an annual salary of four hundred dollars; that the Constitution of the State ordained by the people of this State in the year 1895 did not make the office of

the school commissioner a constitutional office, but by the third section, of article XI., of such Constitution, devolved upon the General Assembly of this State the power and the duty of making "provision for the election or appointment of all the necessary school officers, and shall define their qualifications, powers, duties, compensation and terms of office." That the General Assembly of this State, by the 13th section of an act, approved on the 9th day of March, 1896, 22 Stat., 156, changed the name of county school commissioner of education to county superintendent of education, and by the 15th section of said act provided, "That the salary of the county superintendent of education of each county shall be the same as that now fixed or hereafter to be fixed by law for the school commissioner thereof." That, therefore, the salary fixed by the act, appproved 5th January, 1895, hereinbefore cited, to wit: $400 per annum, was the salary of the county superintendent of education for Berkeley County, and that the acts of the General Assembly of this State, passed and approved in the years 1898, 22 Stat., 874, in the year 1899, 23 Stat., 170, and in the year 1900, 23 Stat., 295, which said acts purporting to change the said salary of $400 to $300 *per annum,* were each unconstitutional, null and void. On the other hand, the appellant contends that the acts of 1898, 1899 and 1900 were not unconstitutional, so far as they amended the act of 5th January, 1895, by changing the salary of the county superintendent, was concerned. Upon the issues then made up, the parties went before his Honor, Judge Klugh, who held that A. H. DeHay, the respondent here, was entitled to be paid an annual salary of $400 and not simply $300, and the Circuit Judge so ordered. The appellants seek to reverse this judgment of the Circuit Court. At first I was inclined to think that the Circuit Judge had committed no error, but upon a more mature reflection I am convinced that his judgment should be reversed, and these are the reflections which have led me to this conclusion. Let the Circuit decree and the exceptions thereto be reported.

It is admitted on all hands that the act, approved 5th January, 1895, see 21 Stat., 984, which fixed the annual salary of the county commissioner of education of Berkeley County at $400, was constitutional when passed. Its force and effect as law, after the adoption of the Constitution of this State in the year 1895, was secured by the means of at least two provisions of said Constitution, namely, in article XI., which is devoted to education, it is provided: "Section 5. * * * The present division of the counties into school districts and the provisions of law now governing the same shall remain until changed by the General Assembly." This section of article XI. of the Constitution was considered by this Court, in the case of *Martin v. School District,* 57 S. C., 130. This section 5, of article XI., shows conclusively that the framers of the Constitution of the year 1895 intended that there should be no *hiatus* in the laws of this commonwealth in regard to the matter of education in all its ramifications. Hence this act, approved in 1895, was made law after the Constitution of 1895 was adopted. But we think there is another provision of the Constitution of 1895 which continued this act of 5th January, 1895, as subsisting law after the Constitution was adopted, namely, sections 10 and 11, of article XVII.: "Section 10. All laws now in force in this State and not repugnant to this Constitution shall remain and be enforced *until altered or repealed by the General Assembly* or shall expire by their own limitation." "Section 11. That no inconvenience may arise from the change in the Constitution of this State, and in order to carry this Constitution into complete operation, it is hereby declared: First. That all laws in force in this State at the time of the adoption of this Constitution, not inconsistent therewith and constitutional when enacted, shall remain in full force until altered or repealed by the General Assembly or expire of their own limitation. * * *"

As before remarked, the laws of the State which had been enacted by the General Assembly at any time prior to the adoption of the new Constitution on 31st December, 1895,

which this Constitution retained as of full force, must not be inconsistent with the provisions of the same and constitutional when enacted. As before remarked, it is admitted on all hands that this act of 5th January, 1895, was consistent with the Constitution of 1868, but now was it consistent with the Constitution of 1895? An examination of article XI. of the Constitution of 1895, governing the whole subject of education, will develop the fact that the only officers in the department of education in this State created by our present Constitution is that of State Superintendent of Education, and the members of the State Board of Education, and the further fact that to the General Assembly is confided the duty of fixing the rate of compensation for the State Superintendent of Education and other officers connected with schools or their management and control. Not only so, but under this article of the Constitution, to the General Assembly is confided the duty of passing laws regulating schools. Thus it is made manifest that there is nothing in the act of 5th January, 1895, inconsistent with the Constitution of 1895. When the General Assembly by its act, approved 9th March, 1896, provided that county commissioners of education should no longer exist as such, but county superintendents of education should take their places, and further provided that the county superintendent of education in this State should be paid such salaries as are now fixed by law, or hereafter may be fixed by law, for the school commissioners, therefore, it seems clear to my mind that the act approved 5th January, 1895, regulated the salary of the county superintendent of education for Berkeley County. So far I am in accord with the Circuit Judge. But just here we differ.

Was it in the power of the General Assembly to alter, amend or repeal the act of 5th January, 1895? Unquestionably, under the general power of legislation, the General Assembly could amend or repeal this act, but the framers of the Constitution had declared the provision of the act of 5th January, 1895, as of binding force after the 31st December,

1895, the date of the going into effect of the Constitution of 1895: *Provided, however,* That the General Assembly may alter, amend or repeal the same.   Here we have presented an act of 1895, of full force after the adoption of the Constitution of 1895, but with full power in the General Assembly of this State to alter, amend and repeal the same. How must such act be amended?   I answer, by a general act or a special act, as the General Assembly may in its wisdom see proper.   But just here it is asserted that the General Assembly is prohibited by certain sections of the Constitution from amending the act of 5th January, 1895, except by a general act, governing all the counties in this State.   I cannot admit such a proposition.   But let me patiently unfold these constitutional *impediments,* so that we may reach a conclusion satisfactory to every one.   Article III., section 34, reads as follows: "Sec. 34.  The General Assembly of this State shall not enact local or special laws concerning any of the following subjects or any of the following purposes, to wit: * * * X.  To fix the amount or manner of compensation to be paid to any county officer, except that the laws may be so made as to grade the compensation in proportion to the population and necessary service required. XI. In all other cases, where a general law can be made applicable, no special law shall be enacted."   To my mind, it is plain that the foregoing provisions of the Constitution relate to the enactment of original and not amendatory acts. For if the provisions of subdivision X. relate to the original laws as well as amendments to laws already existing at the adoption of the Constitution of 1895, then, of course, the General Assembly must act by laws in compliance with this requirement, unless *first,* there are other provisions of that Constitution which permit a different course in special cases; and *second,* a special law can be enacted in all those instances where a general law cannot be made applicable.   (Section 11.)   As before pointed out, the Constitution of 1895, in article XI., section 3, provides, "The General Assembly shall make provision for the election or appointment of all other

necessary school officers, and shall define their qualifications, powers, duties, *compensation* and terms of office." Here the Constitution has made the General Assembly to determine what officers in the matter of education shall be created, and also what compensation shall be paid to them. Immediately after the adoption of the Constitution, to wit: on the 9th March, 1896, county school commissioners are superceded by county superintendents of education, and then, in the year 1898, an act is passed by the General Assembly changing the compensation of the county superintendent of education for Berkeley County from $400 per year to $300, referring in the title of the act to the fact that it is amendatory to the act of 5th January, 1895. Can this exercise of power by the General Assembly be supported under the power of the Constitution to the General Assembly by article XI., relating to education? But this is not all. The Constitution of 1895, in article XVII., section 10, expressly provides that all legislation now existing, not inconsistent with this Constitution, shall remain and be enforced until altered or repealed by the General Assembly, and so likewise are the provisions of section 11. Again, why may not the General Assembly, in amending the act of 5th January, 1895, have determined that the amendatory act of the year 1898 alone could amend the act of 1895? And, therefore, have used the special act referred to in subdivision XI., of section 34, of article III.? This Court, in its recent decision of *Fraser* v. *James,* 65 S. C., 87, where it was held that the Constitution imposed upon the General Assembly the duty of creating a new county when the specified conditions existed, says * * * "it was necessarily incumbent upon the General Assembly to determine for itself whether such conditions existed as preliminary to the performance of the duty imposed upon the General Assembly by the Constitution." So I may infer that the General Assembly determined for itself that it could not amend the act of 5th January, 1895, by a general act, and hence resorted to a special act. For myself, I cannot see how a general act could be made so as to amend the act of 5th

January, 1895. The Convention which formulated the Constitution wisely foresaw these difficulties, and more wisely provided for them. It is suggested that the decision of this Court in the case of *Dean* v. *County of Spartanburg,* 59 S. C., 110, 39 S. E., 226, supports the judgment of the Circuit Court; but upon an examination it will be seen that it was an original act and not one amendatory of a preceding act, which this Court passed on in that case, 22 Stat., 226. And it will be found upon examination that so are the cases of *Nance* v. *Anderson County,* 60 S. C., 501, 39 S. E., 501; and also *Carolina Grocery Company* v. *Burnet,* 61 S. C., 205, 39 S. E., 381; and thus there is no conflict with these cases.

I think the judgment of this Court should be, that the judgment of the Circuit Court be reversed, and that the proceedings be recommitted to the Circuit Court, with directions that an order be formulated dismissing the appeal of A. H. DeHay, as county superintendent of education for Berkeley County, from the order of the county commissioners of Berkeley County, refusing payment of his bill for fifty dollars as salary unpaid to the first day of April, 1901.

MR. JUSTICE GARY. This is a proceeding commenced on the 1st of April, 1901, by the presentation of a claim to the county commissioners of Berkeley County, for the salary of the plaintiff, as county superintendent of education. Payment was refused, whereupon the plaintiff appealed to the Circuit Court, which reversed the decision of the defendants, who have appealed to this Court. The main question involved is, whether the legislature could, by a local and special act, passed after the adoption of the Constitution of 1895, amend a local and special act, passed before the Constitution went into effect, when both acts relate to one of the prohibited subjects embraced in article III., section 34, of the Constitution. We agree with Mr. Chief Justice Pope, that the act of 5th January, 1895, fixing the annual salary of the school commissioners of Berkeley at $400, was constitutional when enacted; that

it was not inconsistent with the Constitution of 1895, and
its provisions were of force at the time of this proceeding,
unless it was altered or repealed by the acts of 1898, 1899
or 1900 (more particularly described in the opinion herein-
before mentioned), which provided that the salary should be
$300 instead of $400.  We also concur in his opinion that
the name of school commissioner was changed by the act of
1896 to that of county superintendent of education.  It is
contended by the respondent that the acts of 1898, 1899 and
1900 could not have the effect of amending the act in exist-
ence before the adoption of the Constitution, by reason of the
fact that they are repugnant to article III., section 34, of the
Constitution, which is as follows: "The General Assembly
of this State shall not enact local or special laws concerning
any of the following subjects or for any of the following
purposes, to wit: I. To change the name of persons or
places.  II. To lay out, open, alter or work roads or high-
ways.  III. To incorporate cities, towns or villages, or
change, amend or extend the charters thereof.  IV. To
incorporate educational or religious, charitable, social, manu-
facturing or banking institutions not under the control of
the State, or to amend or extend the charters thereof.  V.
To incorporate school districts.  VI. To authorize the adop-
tion or legitimation of children.  VII. To provide for the
protection of game.  VIII. To summon and empanel grand
or petit juries.  IX. To provide for the age at which citi-
zens shall be subject to road or other public duty.  X. To
fix the amount or manner of compensation to be paid to any
county officer, except that the laws may be so made as to
grade the compensation in proportion to the population and
necessary service required.  XI. In all other cases where a
general law can be made applicable, no special law shall be
enacted.  XII. The General Assembly shall forthwith enact
general laws concerning said subjects for said purposes
which shall be uniform in their operations: *Provided*, That
nothing contained in this section shall prohibit the General
Assembly from enacting special provisions in general laws:"

* * * Mr. Chief Justice Pope, however, as we understand, differentiates this case from the cases of *Dean* v. *Spartanburg County;* 59 S. C., 110, 37 S. E., 226; *Nance* v. *Anderson County,* 60 S. C., 501, 39 S. E., 5, and *Carolina Grocery Company* v. *Burnet,* 61 S. C., 205, 39 S. E., 389, for the following reasons: 1. Because the act of 1898 is an amendatory and not an original act. 2. Because the act of 1898 was authorized by section 3, article XI., of the Constitution, and, therefore, that it was not affected by section 34, article III., of the Constitution, and 3. Because the General Assembly had the right to determine whether it was advisable to enact a general or a special law.

We will first consider whether the act of 1898 can be construed to be constitutional, on the ground that it is an amendatory and not an original act. In the case of *Carolina Grocery Co.* v. *Burnet,* 61 S. C., 205, 39 S. E., 381, Mr. Justice Jones uses this language: "It may be regarded as settled that local or special statutes upon any of the ten enumerated subjects above will be declared void, and that the express prohibition of special legislation on said subjects shall not be practically nullified or evaded under any form or guise of legislation. *State* v. *Higgins,* 51 S. C., 51, 28 S. E., 15; *Dean* v. *Spartanburg Co.,* 59 S. C., 110, 37 S. E., 226; *Nance* v. *Anderson Co.,* 60 S. C., 501, 39 S. E., 5."

In *Nichols* v. *Walter,* 37 Minn., 264, the Court, after citing certain cases, says: "These cases cited from many on the subject are sufficient to show that in determining whether a law is general or special, Courts will look not to its form or phraseology merely, but to its substance and necessary operation." In *Com.* v. *Patton,* 88 Pa., 258, an act general in form but so worded that it could apply to only one county in the State, was before the Court. It characterized this attempted evasion as "classification run mad." In *State* v. *Pugh,* 43 Ohio St., 98, the Court says, at page 113: "It is not the form the statute is made to assume, but its operation and effect, which is to determine its constitutionality." The foregoing cases are cited in *Edmunds* v. *Herbrandson,* 14 L.

R. A. (N. Dak.), 725.    If, therefore, the force and effect of
an act (whether it be original or amendatory) would be to
destroy the provisions of the Constitution as to special legis-
lation, it should undoubtedly be declared unconstitutional.
If this Court should lay down the rule that the legislature
has a right to pass a special act, amending another special
act, passed before the Constitution of 1895, relating to one
of the subjects prohibited by section 34, article III., of the
Constitution, the provisions of said section would be prac-
tically destroyed, as we will demonstrate.    If this rule
should be sanctioned, the legislature would have the power
not only to strike out every word in the body of the original
act and insert others in the place thereof, but would likewise
have the power to change the title of the original act.    It
would, in short, have the power to enact an entirely new and
different law, if it complied with the constitutional require-
ments that it related to but one subject, and that was ex-
pressed in the title.    In Cushing's Law and Practice of
Legislative Assemblies (section 1302), it is said: "The term
amendment is used to denote any alteration which may be
proposed or adopted, with a view to render a motion con-
formable to the sense or will of the house.    According to the
etymology of the word, it might be supposed that nothing
could be considered as an amendment which did not relate to
and purport to improve the original proposition.    But this
would be far from conveying an adequate idea of what is
meant by the term amendment.    A proposition may be
amended in parliamentary phraseology, not only by an alter-
ation which carries out and effects the purpose of the mover,
but also by one which entirely destroys that purpose, or
which even makes the proposition express a sense the very
reverse of that intended by the mover; and in like manner
a motion, which proposes one kind of proceeding, may be
turned into a motion for another of a wholly different kind,
by means of an amendment; so that, in point of fact, an
amendment is equally effectual, and is often used to defeat
a proposition as well as to promote the object which the

mover of that proposition had in view.    The reason is, that in altering or amending a proposition, the form of the words only, and not the sense or meaning of it, is regarded, any of the words moved may be left out; any other words may be inserted or added; and any word may be substituted in the place of other words contained in the motion."    The following statement of the rule is to be found in Jefferson's Manual, 210: "Amendments may be made so as totally to alter the nature of the proposition; and it is a way of getting rid of a proposition, by making it bear a sense different from what it was intended by the movers, so that they vote against it themselves.    2 Hats., 79, 4, 82, 84.    *A new bill may be engrafted by way of amendment on the words, 'Be it enacted,' &c.*    1 Grey, 190, 192" (italics ours).

We will next consider whether the act of 1898 was authorized by section 3, article XI., of the Constitution.    That section is as follows: "The General Assembly shall make provision for the election or appointment of all other necessary school officers, and shall define their necessary qualifications, powers, duties, compensation and terms of office."    We think the error into which Mr. Chief Justice Pope has fallen is in construing this section alone instead of in connection with section 34, article III., of the Constitution.    In this way force and effect will be given to all the foregoing provisions.    We are free to say we see no inconsistency between them.

We will lastly discuss the right of the General Assembly to determine whether it was advisabe to enact a general or special law.    The rule of construction is different for determining whether a special act is obnoxious to the provisions of the Constitution, that where a general law can be made applicable, no special law shall be enacted, and for determining whether such act is unconstitutional, on the ground that it concerns one of the prohibited subjects mentioned in the Constitution.    One involves a legislative, the other a judicial question.    The following authorities show that whether a general law can be made

applicable, is a question to be decided by the legislature. 15 Ency. of Law, 978, which says: "The Constitutions of many States provide that no special or local law shall be passed when a general law can be made applicable. Under such provisions, it is a question for the legislature exclusively whether a general law can or cannot be made applicable in a certain case" * * * citing numerous authorities in the note on that page. *Guthrie Nat. Bk.* v. *City of Guthrie,* 19 Sup. Ct. Rep., 513, in which the Court uses this language: "It is claimed that it violates the act of Congress, approved July 30, 1886 (24 Stat., 170, c. 818), prohibiting the passage of local or special laws in the territories. That act, among other things, provides that where a general law can be made applicable, no special law shall be enacted in any of the territories of the United States by the territorial legislatures thereof, and it also provides that the territorial legislatures shall not pass local or special laws in any of the cases therein enumerated, among which is a law to regulate the practice in courts of justice. Both of these provisions are said to have been violated in the passage of the act in question. Whether a general law can be made applicable to the subject matter in regard to which a special law is enacted by a territorial legislature, is a matter which we think rests in the judgment of the legislature itself. *State* v. *Hitchcock,* 1 Kan., 184. That body is specially prohibited from passing any local or special law in regard to certain subjects enumerated in the act. Outside and beyond that limitation is the provision above mentioned, and whether or not a general law can be made applicable to the subject, is a matter which is confided to the judgment of the legislature."

*Terre Haute* v. *Kolsem,* 14 L. R. A. (Ind.), 566. The opinion in this case is entitled to great consideration, because it was writtten by that eminent Jurist and distinguished Chief Justice, Elliott. The Court says: "If the enactment of such a law as the one before us is forbidden, it must be by virtue of section 23, of article IV., of the Constitution, for the subject embraced in the act is not included in the enumera-

tion found in the preceding section. But section 23, as has been again and again decided, does not prohibit the enactment of special laws, where general ones cannot be made applicable. It has also been repeatedly held that whether a general law can be made applicable to a particuar subject, is exclusively a legislative question, and it necessarily results, that if the question is legislative, the whole matter, with all its incidents, must be determined by the legislature * * * If the question is legislative, then it is indisputably true that it is excluded absolutely and entirely from the dominion of the judiciary. It is inconceivable that the question can be dissected into fragments, and one part assigned to one department of government and another part to a different department. Under our system of government, the departments are distinct and independent; there is no such thing as a power partly judicial and partly legislative * * * As the question whether a general law can be made applicable is exclusively legislative, the incidents of the main question are necessarily and entirely legislative. Where the principal subject belongs, there the incidents belong. Means, methods and the like belong to the department that is invested with power over the general subject. It is for that department to make choice of modes and means, and as the Supreme Court of the United States has said, 'It is master of its own discretion.'" The cases, however, which decide that this is a legislative question, nevertheless recognize and approve the doctrine that the question is judicial when the legislation concerns one of the prohibited subjects mentioned in the Constitution. In the case of *Carolina Grocery Co.* v. *Burnet,* 61 S. C., 205, 39 S. E., 381, Mr. Justice Jones says: "Such question was treated as a judicial one in *State* v. *Higgins,* 51 S. C., 54, 28 S. E., 15; and in *Dean* v. *Spartanburg Co.,* 59 S. C., 110, 37 S. E., 226, whether compensation to county officers was graded in proportion to population and necessary service, under subdivision 10 above, was treated as a judicial question." To the foregoing cases should be added *Nance* v. *Anderson County,* 60 S. C., 501, 39 S. E.,

151. We do not regard the question as longer open in this State, after the decisions just mentioned. The reason of the difference in the rule is that in one case the Constitution clearly defines the limitation upon legislative action, while in the other the subject is confided to the discretion of the legislature. There is no rule of law by which the Courts can determine whether a necessity exists for the passage of a general law on the subject, but the Courts can determine whether a special act concerns any of the prohibited subjects mentioned in the Constitution. If the Courts should undertake to decide whether a general law could be enacted, it would only substitute its ideas of expediency for those of the legislature upon a question peculiarly appropriate for the consideration of the legislative department of the government.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE JONES. · I concur in the view that the judgment of the Circuit Court should be affirmed. I also concur in this opinion of Mr. Justice Gary, except in so far as he states that the applicability of a general law is solely a question for the legislature. The test of the constitutionality of an act adopted after the Constitution of 1895 and amendatory of a valid act, is whether the original act, *with the proper amendments,* could be enacted under article III., section 34, of the Constitution.